UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **GARY ONEAL JIMERSON,** )<br>)<br>    **Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**SOCIAL SECURITY** )<br>**ADMINISTRATION,** )<br>**COMMISSIONER,** )<br>)<br>    **Defendant.** )<br>) | Civil Action Number<br>   **2:15-cv-00277-AKK** |

## **MEMORANDUM OPINION**

Gary Jimerson brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that his decision – which has become the decision of the Commissioner – is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### **I.  Procedural History**

Jimerson, whose past relevant work history includes work as a diagnostic technician, a statement clerk, a teller, a unit clerk, an assistant manager, a patient care assistant, an insurance customer service representative, and an account

1

coordinator, filed his application for Title XVI Supplemental Security Income on October 17, 2011, and his application for Title II Disability Insurance Benefits on October 20, 2011.  (R. 13).  In both applications, Jimerson alleged a disability onset date of October 17, 2011, due to a cervical herniated disc in the neck, anxiety, severe depression, extreme panic level anxiety, and moderate level depression.  (R. 13, 155).  After the SSA denied his application, Jimerson requested a hearing before an ALJ.  (R. 13).  The ALJ subsequently denied Jimerson's claim, (R. 10), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-4).  Jimerson then filed this action pursuant to §205(g) of the Act, 42 U.S.C. §405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must

review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

    (1)    whether the claimant is currently unemployed;

    (2)    whether the claimant has a severe impairment;

    (3)    whether the impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant is unable to perform his or her past work; and

    (5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. §416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

### IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Jimerson had not engaged in substantial gainful activity since October 17, 2011, the alleged onset

4

date, and therefore met Step One. (R. 15). Next, the ALJ found that Jimerson satisfied Step Two because he suffered from the "severe" impairments of cervical degenerative disc disease status post cervical fusion at C3-4 and C5-6, thoracic degenerative disc disease, depression, panic disorder, and pain disorder. *Id*. The ALJ then proceeded to the next step and found that Jimerson did not satisfy Step Three since he "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 16). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that Jimerson has the residual functional capacity (RFC) to:

> perform sedentary work . . . except [Jimerson] can occasionally push and pull bilaterally with the upper extremities . . . . can climb ramps and stairs and balance frequently . . . . can never climb ladders, ropes, or scaffolds . . . . [and] can occasionally stoop, kneel, crouch, and crawl . . . . [Jimerson] can have occasional exposure to excessive vibration but can have no exposure to hazardous moving machinery or unprotected heights. [Jimerson] can understand, remember, and carry out simple instructions for two hour periods and with normal breaks can complete an eight hour workday. [Jimerson] requires a job that is low stress in nature . . . . [and has] occasional interaction with the public and coworkers with no tandem tasks required.

(R. 17-18). In light of Jimerson's RFC, the ALJ determined that Jimerson "is unable to perform any of his past relevant work." (R. 21). Lastly, in Step Five, the ALJ considered Jimerson's age, education, work experience, and RFC, and determined that "there are jobs that exist in significant numbers in the national

economy that [Jimerson] can perform." (R. 22). Therefore, the ALJ found that Jimerson had "not been under a disability, as defined in the Social Security Act, from October 17, 2011, through the date of [the ALJ] decision." (R.23).

## V. Analysis

Jimerson raises multiple contentions of error which the court will outline and address below. None of these contentions, however, establishes that the ALJ committed reversible error. Therefore, the court will affirm the ALJ's decision.

*1. Allegation that the ALJ Failed to Consider All of Jimerson's Limitations*

Jimerson raises two contentions of error related to his limitations. First, Jimerson asserts that the ALJ's "RFC assessment is devoid of any restrictions regarding [his] limited neck flexion, neck extension, and neck rotation." *See* doc. 9 at 4. According to Jimerson, the ALJ only considered the limitations related to his thoracic degenerative disc disease, depression, panic disorder, and pain disorder, and failed to consider his cervical degenerative disc disease status post fusion at C3-4 and C5-6. *See id*. at 4.[1] The court disagrees, in part, because "[s]tep two is a threshold inquiry" to weed out obvious non-meritorious claims for which "[t]he claimant's burden is mild." *McDaniel*, 800 F.2d at 1031. Therefore, the ALJ did not err solely because he did not articulate limitation(s) specific to an impairment

---

[1] Jimerson does not appeal the ALJ's decision regarding his mental impairments; therefore, the scope of this review is limited to the ALJ's decision regarding Jimerson's physical impairments both singularly and in combination.

6

he found severe at Step Two. *See Walters v. Barnhart,* 184 F. Supp. 2d 1178, 1184 (M.D. Ala. 2001) (asserting that a finding that an impairment is severe "is not tantamount to a conclusion that these impairments imposed significant work-related limitations"); *Dowdy v. Barnhart*, 2005 WL 3841868, at *4 (M.D. Ala. Jan 4, 2005) (concluding that a severe impairment will not necessarily impose "significant work-related limitations" for purposes of RFC).

Jimerson's contentions regarding his RFC also fail because the record is clear that the ALJ considered all of Jimerson's impairments. Specifically, the ALJ found that Jimerson suffered from two severe physical impairments at Step Two and proceeded to offer an RFC assessment that outlined the effect of both impairments. Among other things, the ALJ noted that in April 2012, Jimerson's treating physician, Dr. Martin Jones, released Jimerson back to work as a senior account representative at State Farm Insurance despite Jimerson's continued complaints post-surgery of "decreased range of motion because of the cervical fusions," "some pain," and "some degree of stiffness," (R. 371-372, 451), and that the state medical consultant, Dr. Robert Heilpern, opined that Jimerson's neck surgery and ongoing complaints of pain and stiffness posed minimal restrictions on Jimerson's ability to perform light work, (R. 351-358). Despite the medical evidence, before assessing Jimerson's RFC, the ALJ provided Jimerson an opportunity to develop the record at the hearing. In response, Jimerson only

7

described limited restrictions in his daily activities, *see, e.g.,* (R. 33-36, 38-43)*,* stating that his pain is located "in the middle of my back which is the thoracic spine, my lower back, and I have the numbness and tingling in my left and right arm," (R. 33), and that turning his neck from side to side "would cause stiffness in my neck, and some pain, and a pulling sensation . . . ," (R. 36). Based on this testimony, despite the medical opinion that Jimerson is capable of performing light work, the ALJ limited Jimerson to sedentary work instead. *See* (R. 21) (stating that he "reduced [Jimerson's] exertional level to sedentary," "due to [his] consistent complaints of pain."). Because "there is no rigid requirement that the [ALJ] specifically refer to every piece of evidence in his decision, so long as [the court can] conclude [that] the [ALJ] considered [Jimerson's] medical condition as a whole," *Parks ex rel. D.P. v. Comm'r, Soc. Sec.*, 783 F.3d 847, 852 (11th Cir. 2015), the ALJ's finding is sufficient to establish that the ALJ properly considered all of Jimerson's physical impairments in concluding that Jimerson is capable of performing sedentary work. *See Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x. 823, 825-26 (11th Cir. 2010); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Next, as his second contention of error related to his limitations, Jimerson asserts that the ALJ's hypothetical questions to the vocational expert failed to include a correct and full statement of his limitations. *See* doc. 9 at 12. The

standard for hypothetical questions requires the ALJ to include only the limitations that are supported by the record, and the ALJ is not required to include findings that he has properly rejected. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). The record here reflects that the hypothetical questions to the VE covered all of the appropriate limitations from Jimerson's RFC. *See* (R. 18, 22-23, 47-53). Therefore, in light of the court's finding that the record provides no support for Jimerson's initial contention that the ALJ failed to incorporate all of his impairments in his RFC assessment, the court finds no reversible error on this issue.

   2. *Allegation that the ALJ Failed to Consider the Severity and Impact of Jimerson's Obesity, in Combination with His Other Impairments*

Finally, Jimerson alleges that the ALJ failed to consider his obesity and the potentially exacerbating effects it may have on his other musculoskeletal impairments. *See* doc. 9 at 15-19. The evidence demonstrates that, at all relevant times, Jimerson's height (5'11") and weight (259 pounds) values, *see* doc. 9 at 17-18, quantify him as obese according to his BMI calculation. (R. 271, 336, 570). Still, evidence of a diagnosis or a mere showing of departure from medical standards of bodily perfection or normality is insufficient to establish a disabling condition. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Instead, the record must demonstrate that Jimerson's obesity affects his ability to

9

work.  *See id*.  In making such an assessment, the court "will not make assumptions about the severity or functional effects of obesity combined with other impairments" because the combination "may not increase the severity or functional limitations of the other impairments."  SSR 02-1p.  Rather, when evaluating obesity in assessing RFC, the likelihood of obesity limiting function will depend on a variety of factors "such as sitting, standing, walking lifting, carrying, pushing, and pulling, . . . climbing, balancing, stooping, and crouching."  *Id*.  Finally, "there is no rigid requirement that the [ALJ] specifically refer to every piece of evidence in his decision, so long as [the court can] conclude [that] the [ALJ] considered [Jimerson's] medical condition as a whole."  *Parks ex rel. D.P.*, 783 F.3d at 852.  In fact, "conclusory statements by an ALJ to the effect that the combined effects of a claimant's impairments are not sufficiently severe to rise to the level of disability are sufficient to demonstrate that the ALJ considered all of a claimant's impairments singly and in combination."  *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986); *see also Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002).

There is no reversible error here because, as Jimerson concedes, obesity levels "do not correlate with any specific degree of functional loss."  Doc. 9 at 16.  Also, mere BMI calculation, without evidence demonstrating that Jimerson's

obesity further restricted his ability to perform the already limited sedentary work, does not equate to a loss of work-function. The absence of such evidence is relevant here where the ALJ cites to the same medical records as Jimerson and limits Jimerson's work activity according to the suggestions in SSR 02-1p. *See* (R. 28-21). This suggests that, despite knowledge of Jimerson's height and weight, the ALJ reasonably concluded that Jimerson's obesity did not provide any additional limitations on his ability to complete work-related activities or have any documented exacerbating effects on his other severe impairments. Moreover, the record, which references obesity rarely and in passing, contains no indication that Jimerson's obesity exacerbated his physical impairments. *See* (R. 331-336) (including physical evaluation in diagnostic impressions from mental examination on January 13, 2012); (R. 480) (evaluating Jimerson's condition pre- and post-operation during hospital stay for second cervical fusion November 21, 2011 to November 22, 2011); (R. 572) (during stay at UAB Med. West on October 23, 2014). Finally, Jimerson had the opportunity to develop the record but failed to provide any evidence to support his contention that his obesity further reduced his already restricted capacity for sedentary work. *See* (R. 32). Under these circumstances, Jimerson is not entitled to relief.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Jimerson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards. Therefore, the Commissioner's final decision is **AFFIRMED**.

**DONE** the 27th day of April, 2016.

                                                  **ABDUL K. KALLON**
                                          UNITED STATES DISTRICT JUDGE